UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Julian De'Andre Battle,<br><br>    Plaintiff,<br><br>v.<br><br>Laura Jones,<br><br>    Defendant. | C/A No. 6:15-cv-4960-BHH-KDW<br><br><br>REPORT AND RECOMMENDATION |

  Julian De'Andre Battle ("Plaintiff"), a detainee at the Greenville County Detention Center ("GCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendant violated his constitutional rights.[1] This matter is before the court on Plaintiff's Motion for Summary Judgment filed on August 19, 2016, ECF No. 57, to which Defendant filed a Response on September 9, 2016, ECF No. 59. This matter is also before the court on Defendant's Motion for Summary Judgment filed on September 13, 2016, ECF No. 60. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[2] on September 14, 2016, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 61. Plaintiff responded to Defendant's Motion for Summary Judgment on October 17, 2016. ECF No. 64. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because both Motions are dispositive, a Report and Recommendation ("Report") is entered for the court's review.

---

[1] Plaintiff originally sued two Defendants; however, following initial review, the Complaint was summarily dismissed against Howard Steinberg on May 10, 2016. ECF No. 29.

[2] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Factual and Procedural Background

This case was filed on or about December 4, 2015.[3] In the Complaint submitted by Plaintiff, he alleges that Defendant, an investigator with the Greenville County Sheriff's Office, violated his Fourth and Fourteenth Amendment rights when she submitted an affidavit to a county magistrate and obtained an arrest warrant for Plaintiff on September 14, 2010, charging him with the crime of intimidating a witness in violation of South Carolina Code Section 16-9-340 ("witness-intimidation claim"). ECF No. 1 at 2; *see* ECF No. 59-3 (the warrant). Plaintiff is proceeding *in forma pauperis* and requests a declaratory judgment, compensatory damages in the amount of $1000.00 per day for each day since the beginning of his detention on September 15, 2010, and punitive damages in the amount of $500,000.00. ECF No. 1 at 5.

The facts underlying the charge show that Raphael Dodd was shot and killed in the breezeway of the Park West apartment complex in Greenville, South Carolina on December 25, 2009. Dodd's cousin, Jamaal Stewart ("Stewart"), was standing next to Dodd when he was killed. Plaintiff was charged with murder for the killing.[4] After his arrest for the murder, Plaintiff remained in GCDC until April 17, 2010, when he made bail. Among the conditions of his release

---

[3] Plaintiff's Complaint was filed on this court's docket by the Clerk of Court on December 15, 2015, but it was signed by Defendant on December 4, 2015. ECF No. 1 at 5. There is no dated institutional stamp or postmark on the envelope in which the Complaint was mailed showing the actual date on which Plaintiff submitted his pleading to the GCDC mailroom for filing. Thus, to give Plaintiff full benefit of the earliest possible date of filing, for purposes of this Report the court is using the date of signing of the Complaint (December 4, 2015) as the date of filing. *See Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court).

[4] Plaintiff's first murder trial ended in a mistrial, but he was found guilty of murder in a second trial. On June, 28, 2012, the solicitor dismissed the witness intimidation charge that is the subject of this lawsuit. ECF No. 64-1 at 10. The conviction entered following the second trial has since been overturned on appeal, and the murder case is now pending in the Greenville County Court of General Sessions.

was a court order prohibiting Plaintiff from having any contact with the victim's family. ECF No. 59-1.

The parties agree that on September 10, 2010, Plaintiff drove to the DJ Fadz barber shop in Greenville to pick up his brother. When he arrived, Plaintiff saw Stewart, the victim's cousin and an eyewitness to the murder, detailing cars in the parking lot. Plaintiff sat on his car while he waited for his brother. ECF No. 59-2**.** There is some dispute as to who was the aggressor, but the parties agree that Plaintiff and Stewart engaged in a heated confrontation that had to be broken up by other persons who were at the location. After their confrontation ended, Stewart informed the police that Plaintiff had called him a "snitch bitch" and had threatened to "smash [Stewart's] face in" for giving a statement to the police about his cousin's murder. *Id*. Stewart provided his oral statement to Greenville County Sheriff's Office Investigator Tracy King on the day of the incident (September 10, 2010 – a Friday) and then provided a written statement the following Monday to Investigators King and Defendant. Plaintiff asserts that he did not threaten Stewart and claims that he drove home, called 911, and reported to a police officer that Stewart had threatened him. ECF No. 1-3 at 2, 57 at 2. Defendant states -- and Plaintiff does not dispute -- that she took Stewart's statement to Assistant Solicitor Howard Steinberg and a decision was made to seek a warrant for Plaintiff's arrest on the charge of intimidating a witness. ECF No. 59-4 at 3-4. The affidavit for the warrant stated

> The affiant has a statement from the victim (Julian Jamaal Stewart) that on September 10, 2010, the defendant did approach the victim at his place of employment and threaten him by stating that he was a "snitch" and that he would "smash his face in". The victim is a witness in a murder where the defendant has been charged with the murder. The defendant is currently out on bond for this murder that occurred on December 25, 2009. The above listed offense occurred on Donaldson Rd. at DJ's Fadz which is in Greenville County. The victim stated that he is in fear for his life because of Defendant being out on bond for a murder charge.

ECF No. 59-3. Following his arrest on the warrant on September 15, 2010, Plaintiff was again detained at GCDC, remained there through his trials, *see supra* note 4, and is still detained there.

3

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine

issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.  Analysis

    A.  Motions for Summary Judgment[5]

        1.  Malicious Prosecution[6]

Plaintiff contends and responds that he is entitled to summary judgment on malicious prosecution claim because Defendant obtained an arrest warrant that resulted in his detention without probable cause. ECF Nos. 57 at 1, 64 at 4. Plaintiff asserts that evidence showing that Defendant took Stewart's report as truth without investigating Plaintiff's report that Stewart was the aggressor in the confrontation shows that the affidavit did not provide probable cause for the warrant. According to Plaintiff, the discrepancies between his and Stewart's reports should have called Stewart's credibility into question with Defendant had she properly investigated the incident. ECF Nos. 57 at 2, 64 at 5. Defendant responds and

---

[5] Both parties have filed Motions for Summary Judgment. ECF No. 57, 60. Defendant's memoranda both in response to Plaintiff's Motion and in support of her own Motion are essentially identical. ECF Nos. 59-1, 60-1. Because of the similarity of the required analysis and discussion, both Motions are considered and discussed simultaneously in this Report.

[6] Although Plaintiff also uses the terms "false arrest" and "false imprisonment" in his supplemental pleading to describe the claims he brings, ECF No. 1-4 at 3, he cannot state a plausible false-arrest claim under applicable Fourth Circuit law because it is clear from the record that he was arrested on a warrant issued by neutral magistrate and he does not challenge the facial validity of the warrant. *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998); *Williams v. Pruitt*, No. 8:13-cv-01812-JMC, 2013 WL 4500436, at *3 (D.S.C. Aug. 19, 2013); *see also Wright v. Dennis*, No. 8:07-cv-299-RBH, 2008 WL 822047, at * 3 (D.S.C. March 26, 2008) (distinguishing a false-arrest claim based on a warrantless seizure from a malicious prosecution claim based on a warrant for which probable cause is challenged). Furthermore, false imprisonment is not a federal claim. It is only a state claim. *Cloaninger ex rel Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 329 (4th Cir. 2009); *Little v. Reid*, No. 5:09-cv-55-02-MU, 2010 WL 3219348, at *1 (W.D.N.C. Aug. 11, 2010) (same). Accordingly, the undersigned will not further address any false-arrest or false-imprisonment claims.

contends that Plaintiff has not proved that the affidavit presented to obtain the arrest warrant did not provide the magistrate with probable cause for the issuance of the warrant because the statement of a reliable victim is legally sufficient to provide probable cause. ECF Nos. 59-1 at 6, 60-1 at 6. Defendant further responds and contends that once probable cause was established by the victim's statement, there was no obligation for Defendant to investigate further before submitting the affidavit for the warrant, particularly where there is no proof that Defendant was even aware that Plaintiff had made a 911 call and given a report before the arrest warrant was applied for. ECF Nos. 59-1 at 7, 60-1 at 7.[7]

There is no independent cause of action for malicious prosecution under § 1983. A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment

---

[7] It appears from evidence produced on summary judgment that Plaintiff's § 1983 claims are barred by the applicable statute of limitations because this case was filed on or about December 4, 2015 -- over three years after the date on which the witness-intimidation charge was dismissed on June 28, 2012. ECF No. 64-1 at 10; *see Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (the statute of limitations for a constitutional malicious prosecution claim is three years, but the date of accrual is not until the criminal proceedings end in the plaintiff's favor). However, Defendant did not raise the statute of limitations as an affirmative defense in her answer and she does not discuss it in connection with her Motion. Thus, under applicable law, the defense is arguably waived. *See* Fed. R. Civ. P. 8(c)(1); *CSX Transp., Inc. v. Carolina Feed Mills, Inc.* No. 4:01-cv-725-25BF, 2002 WL 32082179, at *2 (D.S.C. Feb. 15, 2002). While it is clear that this court may *sua sponte* raise the issue of statute of limitations in a case such as this filed *in forma pauperis* before service is issued and where the issue is clear on the face of the complaint, *see, e.g.*, *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656-57 (4th Cir. 2006) (holding that the court can raise a statute of limitations defense *sua sponte* when reviewing a complaint filed *in forma pauperis*); *Rogers v. Isom*, 709 F. Supp. 115, 117 (E.D. Va. 1989) ("A determination of frivolousness on the basis of affirmative defenses is appropriate even though no responsive pleadings have been filed."), it is less clear that the court can raise the issue *sua sponte* after service and after the issue becomes obvious through the submission of evidence in support of a motion. *But see, e.g.*, *Fuewell v. Thompson*, No. 4:12-cv-100-RBH, 2014 WL 30015, at *2 (D.S.C. Jan. 3, 2014) (addressing statute of limitations *sua sponte* on motion for summary judgment); *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 7:05CV00776, 2007 WL 951692, at *5 (W.D. Va. Mar. 23, 2007) (*sua sponte* consideration on motion to dismiss following service), *aff'd*, 324 F. App'x 250 (4th Cir. 2009). Because neither party raised or discussed the issue, even though it is arguably determinative of the matter, the undersigned notes this issue for the District Court for informational purposes and will discuss the issues actually raised by the parties herein.

claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). In order for a plaintiff to state a § 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, the defendant must have "seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996). The Fourth Circuit later stated that what it "termed a 'malicious prosecution' claim in *Brooks* is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution -- specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Snider v. Lee*, 584 F.3d at 199 (quoting *Lambert v. Williams*, 223 F.3d at 262).

Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th

Cir. 1991). As a result, in order to prove an absence of probable cause, Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

In *United States v. Beckham*, 325 F. Supp. 2d 678 (E.D. Va. 2004) (internal quotations omitted), the court held that

> a finding of probable cause may be based on information provided by a victim or eyewitness to a crime, as it is well-established that when an officer has received … information from some person -- normally the putative victim or an eye witness -- who it seems reasonable to believe is telling the truth, he has probable cause.

*Id.* at 687; *see also Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself.") (internal citation omitted). Thus, "unless there is an apparent reason for the officer to believe the victim is lying," . . . "a victim's statement will constitute sufficient probable cause." *Williams v. Wright*, No. 6:10-cv-2844-TMC-JDA, 2011 WL 6700373, at *19 (D.S.C. Nov. 2, 2011).

Here, the record shows that Defendant's warrant affidavit established probable cause for Plaintiff's arrest for the crime of witness intimidation. As a result, Plaintiff cannot show a prima facie claim of Fourth Amendment "malicious prosecution." Under South Carolina law, it is a felony "for a person by threat or force to: (1) intimidate or impede a . . . witness . . . in the discharge of his duty as such; or (2) destroy, impede, or attempt to obstruct or impede the

administration of justice in any court." S.C. Code Ann. § 16-9-340. As previously shown, Defendant's warrant affidavit stated:

> The affiant has a statement from the victim (Julian Jamaal Stewart) that on September 10, 2010, the defendant did approach the victim at his place of employment and threaten him by stating that he was a "snitch" and that he would "smash his face in." The victim is a witness in a murder while the defendant has been charged with the murder. The defendant is currently out on bond for this murder that occurred on December 25, 2009. This above listed offense occurred on Donaldson Road at DJ's Fadz which is in Greenville County. The victim stated that he is in fear for his life because of the defendant being out on bond for a murder charge.

ECF No. 59-3. The affidavit establishes each element of the crime: Plaintiff's presence near Stewart (an eyewitness in the murder case against Plaintiff) in violation of the court's "stay-away" order, coupled with Plaintiff's threat to harm Stewart for being a "snitch" are sufficient to lead a reasonable person to believe that Plaintiff had threatened Stewart in an effort to dissuade him from continuing to serve as a witness. Although Plaintiff told a different version of the incident to a 911 operator and to another law enforcement officer after the fact, there is nothing showing that Defendant was aware of Plaintiff's version before the time she filed her affidavit for an arrest warrant. In fact, Defendant's responses to Plaintiff's interrogatories submitted by Plaintiff show that Defendant was not aware of Plaintiff's version of events before she applied for the warrant. ECF No. 57-1 at 2, 5. Moreover, both the warrant affidavit and the affidavits submitted in support of Defendant's Response to Plaintiff's Motion for Summary Judgment and in support of Defendant's Motion for Summary Judgment show that both Defendant and Investigator King, who witnessed the written statement, believed that Stewart was a reliable and trustworthy witness. ECF Nos. 59-2 at 3, 4; 60-4 at 3, 4. Because Stewart's eyewitness account given orally on the day of the

incident and in written form three days later established probable cause, the sheriff's investigators needed nothing more to seek the arrest warrant.

Plaintiff contends that Stewart's statement was insufficient to establish probable cause. Instead, Plaintiff claims that prior to seeking the arrest warrant, Defendant should have investigated two sources of potentially exculpatory evidence -- Plaintiff's 911 call in which he claimed that Stewart was the aggressor and an affidavit (dated October 26, 2010) provided by Donald Jones, the owner of DJ Fadz barber shop. ECF No. 59-4. Plaintiff claims that his phone call and the affidavit showed that Stewart's statement was unreliable and, therefore, insufficient to establish probable cause. Plaintiff's position is incorrect for several reasons.

First, as previously stated, Stewart's statement, without more, was legally sufficient to establish probable cause for Plaintiff's arrest. Stewart was both a victim and an eyewitness to Plaintiff's alleged witness intimidation. In addition, nothing about Stewart's statement gave the officers a reason to doubt that Stewart was a reliable and trustworthy witness as shown through the affidavits of Investigator King and Defendant. The statement he provided to Investigator King on Friday, September 10, 2010 and the statement he provided to both officers the following Monday were detailed and consistent. Furthermore, Plaintiff's participation in any altercation of any kind with Stewart was suspicious because a condition of Plaintiff's release was that he have no interaction with the murder victim's family. ECF No. 60-2 at 2. Thus, probable cause for Plaintiff's arrest was established on the day of the incident, when Stewart relayed the events to Officer King. Once the officers had probable cause from Stewart, they had no duty to conduct a further investigation prior to seeking the arrest warrant. In this regard, the United States District Court for the District of Maryland has stated:

> [P]olice officers need not exclude every suggestion that a victim is not telling the truth. Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established. Consequently, the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage. Accordingly, the inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation . . . . The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial.

*Crouch v. City of Hyattsville*, No. DKC 09-2544, 2012 WL 6019296, at *6 (D. Md. Nov. 30, 2012) (quoting *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999)); *see Pickens v. Hollowell*, 59 F.3d 1203, 1208 (11th Cir. 1995) (finding no duty for sheriff to investigate suspect's exculpatory claim even though she raised it at the time of arrest).

Plaintiff's reliance on his 911 call on the day of the incident to claim that Defendant could not rely on Stewart's statement to support probable cause is also misplaced because an officer has no duty to investigate a suspect's claim of innocence and because Plaintiff cannot establish that Defendant was aware of the 911 call prior to her obtaining the arrest warrant from the magistrate judge. Officers cannot have a duty to investigate something about which they are unaware, and the only evidence relating to Defendant's awareness of the 911 call is her interrogatory response stating that she cannot recall when she learned about it. Were the court to find otherwise and place a duty on an officer to investigate further despite having sufficient probable cause for a warrant, any suspect could defeat probable cause and delay an arrest simply by saying, "I didn't do it." In absence of evidence showing that Defendant knew about the 911 call prior to obtaining the arrest warrant, Plaintiff's arguments concerning the call are irrelevant and do not support his request for summary judgment and do not raise genuine issues of material fact precluding Defendant's request for summary judgment.

Plaintiff also claims that Defendant violated his rights by not investigating an affidavit provided by Donald Jones, the owner of the DJ Fadz barber shop where the incident between Plaintiff and Stewart took place. Even though, as previously stated, Defendant had no duty to investigate the matter further once she had probable cause though Stewart's statement, Plaintiff's reliance on Donald Jones's affidavit is misplaced because Donald Jones's testimony does not help Plaintiff. Donald Jones testifies that he came outside after Plaintiff and Stewart had initially communicated with each other and after he heard a heated exchange. ECF No. 59-4. He was not outside when the altercation began and was unable to observe the cause of the incident and, as a result, an investigation into Donald Jones's observations would have yielded no helpful information on the issue of probable cause. The court finds that Plaintiff has failed to submit any competent proof showing that Stewart's version of the incident was unreliable or improperly motived at the time the warrant was sought and, therefore, Plaintiff has failed to demonstrate that he is entitled to summary judgment in this case. Based upon all the information before the court, it is clear that Defendant had probable cause to seek the arrest warrant that is the subject of this matter and that Plaintiff was not maliciously prosecuted. Accordingly, the undersigned recommends that Plaintiff be denied summary judgment and that Defendant be granted summary judgment on this Fourth Amendment malicious-prosecution claim.

    2.    Due-Process Violation

Plaintiff contends that his Fourteenth Amendment due-process rights were violated when he was kept in jail on the witness-intimidation charge for 14 months without an indictment. ECF No. 1 at 3. Defendant responds that Plaintiff was arrested on an arrest

warrant supported by probable cause and, therefore, he cannot show any due-process violation. ECF No. 59 at 10.

In holding that a plaintiff who had been detained on a valid warrant despite protestations of innocence failed to allege a due-process claim arising from his period of incarceration, the United States Supreme Court held in *Baker v. McCollan*, 443 U.S. 137, 145 (1979):

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers -- all of whom may be potential defendants in a § 1983 action -- is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id*. at 145-46; *see Gay v. Wall*, 761 F.2d 175, 178-79 (4th Cir. 1985) (clarifying that *Baker* involved state actors' "failure to take affirmative steps to determine [the plaintiff's] innocence," and did not involve continued incarceration with actual knowledge of the plaintiff's innocence); *see also Clark v. Link*, 855 F.2d 156, 165-66 (4th Cir. 1988) (citing *Baker* and holding that no due-process claim was stated based on brief incarceration pending bond setting where the plaintiff was arrested under a valid warrant).

Although ultimately Plaintiff was not convicted of the witness-intimidation charge, the lack of conviction does not give rise to a cause of action under § 1983 for violation of due process. *See Baker v. McCollan*, 443 U.S. at 145. Respondent's innocence of the charge contained in the warrant is generally irrelevant to his claim of deprivation of liberty without

13

due process of law because the Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released. Also, insofar as his continued incarceration on the witness-intimidation charge is concerned, it is clear that Plaintiff was also incarcerated on the pending murder and firearms charges. Therefore, Plaintiff cannot show that his period of detention was solely the result of the charge on which the disputed warrant was issued and he cannot show prejudice from the lack of indictment on the witness-intimidation charge. *See Jones v. Angelone*, 94 F.3d 900 (4th Cir. 1996) (pre-indictment delay of more than ten years, while in prison in another state, did not violate due process clause); *United States v. Kalbflesh*, 621 F. App'x 157, 158-59 (4th Cir. 2015) (prisoner must show actual prejudice from any pre-indictment delay); *United States v. Brady*, No. 3:13-cr-23-06, 2013 WL 5274231, at *1 (N.D.W. Va. Sept. 17, 2013) (30-month delay in indictment did not violate due process).

Plaintiff's reliance on a case he calls "City and Foley," ECF No. 64 at 6-7, is of no benefit to his claim because he does not provide the court with a legal citation to that case and the undersigned's efforts to find it independently were unsuccessful. In any event, as was shown in the discussion of the malicious-prosecution claim, once Defendant has probable cause through reliance on Stewart's statement, she was under no further duty to investigate Plaintiff's exculpatory claims. Furthermore, the cases that Plaintiff does provide citations to: *Patton v. Prezybylski*, 822 F.2d 697 (7th Cir. 1987) and *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992), are not supportive of his claim because they are factually distinguishable. Each of those cases involved situations, unlike this one, where the arresting officer or officers discovered that the plaintiff was not the person named in a pre-existing warrant but did

14

nothing to have him released, *Patton*, or obtained credible alibi evidence showing that the plaintiff did not commit the crime charged in the warrant but failed to take steps to release him, *Sanders*. They did not involve situations, as here, where the arrest was supported by probable cause, where the only arguably exculpatory evidence came from the arrestee himself, or where the disputed charge was only one of several charges pending against the plaintiff during his period of detention. Even though he was not ultimately convicted of the charged crime, because his arrest was supported by probable cause and because there is no showing that Defendant ever possessed convincing exculpatory evidence during the period of detention, Plaintiff cannot show that his period of incarceration on the witness-intimidation charge violated due process. Accordingly, the undersigned recommends that Plaintiff be denied summary judgment and that Defendant be granted summary judgment be granted on this claim.

### 3.     Qualified Immunity

Defendant contends that she is entitled to qualified immunity from suit. ECF No. 60-1 at 9-12. Plaintiff does not respond to the issue of qualified immunity. ECF No. 57, 64.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2)

whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Here, the record shows that Defendant did not transgress any statutory or constitutional rights of Plaintiff in the discretionary exercise of her professional judgment. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant be granted qualified immunity.

### 4. State Law Claims

Having found that Defendant is entitled to summary judgment regarding Plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claim for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that Plaintiff's Motion for Summary Judgment, ECF No. 57, be DENIED, and that Defendant's Motion for Summary Judgment, ECF No. 60, be GRANTED.

IT IS SO RECOMMENDED.

December 20, 2016 Kaymani D. West
Florence, South Carolina United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).